IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAYON LAVELLE PORK,

    Petitioner,

v.                                                            Civil Action No. **3:16CV949**

HAROLD W. CLARKE,

    Respondent.

## REPORT AND RECOMMENDATION

Rayon Lavelle Pork ("Pork"), a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this petition for habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1).[1] Respondent has moved to dismiss the action. (ECF No. 13.) The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that the § 2254 Petition be DISMISSED.

### A. Current Claims for Relief

In his § 2254 Petition, Pork demands relief upon the following grounds:

Claim 1     Pork failed to receive the effective assistance of counsel when the Court of Appeals of Virginia dismissed a portion of his petition for appeal for failure to comply with Va. Sup. Ct. R. 5:17(c)(1)(iii). (§ 2254 Pet. 5.)

Claim 2     "Illegal *Terry*[2] stop in violation of the 4th Amendment. Officer conducted a *Terry* stop on me based upon an anonymous tip that did

---

[1] The Court employs the pagination assigned to Pork's submissions by the CM/ECF docketing system. The Court corrects the punctuation and capitalization in the quotations from Pork's submissions.

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

|           |                                                                                                                                                                                                                                               |
|-----------|---|
|           | not have any indicia of reliability or predictive information." (*Id.* at 7.) |
| Claim 3   | "Unlawful seizure in violation of the 4th Amendment. The initial encounter with the officer transitioned into a seizure with the arrival of multiple officers who positioned themselves around my vehicle." (*Id.* at 8.) |
| Claim 4   | "Unlawful search in violation of the 4th Amendment. The officer unlawfully searched my vehicle because he did not have on record at my suppression hearing any testimony that he believed I was dangerous or may gain access to a weapon." (*Id.* at 10.) |

As explained below, Claim 1 lacks merit and Claims 2, 3, and 4 fail to provide a viable basis for federal habeas relief.

### B.  Applicable Constraints upon Collateral Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given the foregoing restraints, the findings of the Virginia courts in rejecting Claim 1 figures prominently in this Court's analysis.

### C. Alleged Ineffective Assistance of Counsel

In Claim 1, Pork contends that he failed to receive the effective assistance of counsel on appeal. A proper understanding of this claim requires a brief review of Pork's direct appeal and state habeas proceedings.

The Court of Appeals of Virginia provided the following summary of his direct appeal proceedings:

> Pork appeal[ed] the ruling of the Circuit Court of the City of Portsmouth ("trial court") denying his motion to suppress the evidence recovered pursuant to a *Terry* seizure and frisk. Pork's single assignment of error alleges the trial court erred in denying his motion because the officer "lacked a reasonable articulable suspicion of criminal activity afoot at the moment he drew his gun on Pork and ordered Pork out of his car" and also because "the incriminating character of the plastic baggy and capsules seized from Pork's pocket was not immediately apparent to [the officer] since the officer could not distinguish from feel alone whether the plastic baggy or capsules contained legal or illegal drugs."
> For the following reasons, we hold that the seizure and pat down of Pork were lawful because the officer had reasonable, articulable suspicion that criminal activity was afoot and that Pork was armed. We further conclude that we need not determine whether the seizure of the heroin from Pork's pocket was constitutionally proper because this argument was waived by Pork's failure to assign error to the trial court's alternative

3

holding regarding the doctrine of inevitable discovery. Accordingly, we affirm the trial court.

. . . .

This appeal arises from an interaction between Pork and Officer Siniscalchi of the Portsmouth Police Department that occurred when Officer Siniscalchi responded to a citizen's complaint of a suspicious occupied vehicle. . . . Before we can assess whether Officer Siniscalchi's actions were constitutional, we must first determine the nature of his encounter with Pork, and whether it changed at any point during the course of their interaction. Both parties agree that the encounter was initially consensual. Pork contends that he was seized when Officer Siniscalchi drew his weapon and ordered him out of the car. Conversely, the Commonwealth contends that Pork was not seized until he complied with Officer Siniscalchi's command to step out of the vehicle. By then, the Commonwealth argues Siniscalchi had a reasonable, articulable suspicion that Pork was carrying a concealed weapon and, thus, was engaged in criminal activity and was armed. We agree with the Commonwealth.

. . . .

Pork was sitting in the driver's seat of a vehicle parked legally on the street. Officer Siniscalchi approached the vehicle on foot from the driver's side at an angle that would have made his approach obvious to Pork. Officer Siniscalchi then explained to Pork that he was there to investigate a citizen's report that two men were sitting in a vehicle for unknown reasons. Pork was initially cooperative and provided his identification to Officer Siniscalchi. Thus, the encounter between Pork and the officer, at least at the outset, was indeed a consensual encounter.

*Terry* Seizure

The next inquiry we must answer is when the interaction transformed from a consensual encounter to a seizure within the meaning of the Fourth Amendment. "A person is 'seized' within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe that he was not free to leave the scene of an encounter with the police." *McCain v. Commonwealth*, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citations omitted). . . .

In the present case, Pork was not seized until he submitted to Officer Siniscalchi's display of force, show of authority, and complied with the officer's demand and exited the vehicle. The record establishes that after Officer Siniscalchi observed the "silhouette of a firearm" in the backseat of the vehicle that was easily accessible to both occupants of the vehicle, he then asked Pork if there were any weapons in the car. Pork "hesitated completely," and his eyes shifted to the right. Officer Siniscalchi then asked Pork to step out of the vehicle, but Pork ignored the command and immediately concealed his right hand near his right hip, between the

4

driver's seat and center console. Officer Siniscalchi told Pork to put his hands on the steering wheel at least three times, but Pork continued to reach to the right. In response to Pork's refusal to keep his hands on the steering wheel, Officer Siniscalchi drew his weapon and again told Pork to step out of the car, at which point, Pork complied.

. . . .

Similar to the appellants in *Jones* and *Beasley*, Pork initially ignored Officer Siniscalchi's multiple commands to keep his hands where they could be seen. It wasn't until Officer Siniscalchi drew his weapon and Pork complied with his command to exit the vehicle that Pork *actually submitted* to Officer Siniscalchi's authority and was seized within the meaning of the Fourth Amendment.

Having resolved when the seizure of Pork occurred, to determine if such seizure was lawful, we must next determine if, at the time of the seizure, Officer Siniscalchi had a reasonable, articulable suspicion that Pork may have been involved in criminal activity. . . .

In this case, Officer Siniscalchi first encountered Pork at night in a high crime area known for illegal drug activity that was dimly lit. Officer Siniscalchi observed the silhouette of what appeared to be a handgun in the backseat that was within reaching distance of both Pork and the other passenger. When asked if there were any weapons in the car, Pork hesitated in answering. When Officer Siniscalchi asked Pork to step out of the vehicle, Pork began reaching towards his right side, immediately concealing his right hand in the area between the driver's seat and center console. Despite Officer Siniscalchi's repeated commands for Pork to stop reaching and to place his hands on the steering wheel, Pork continued to conceal his right hand. Given these facts, Officer Siniscalchi had reasonable, articulable suspicion that Pork possessed a concealed weapon.

The holdings in *Jones* and *Beasley* further demonstrate that Officer Siniscalchi reasonably suspected that Pork possessed a concealed weapon. In *Jones*, we held that the officers had reasonable suspicion that the appellant possessed a concealed weapon, given that the encounter occurred late at night in an area known for drug trafficking, the appellant acted "furtively" and ignored several commands from the officers, and the observation of a knife behind the passenger seat within reach of appellant. 52 Va. App. at 552–54, 665 S.E.2d at 264. In *Beasley*, we similarly concluded reasonable suspicion existed when the encounter occurred at night in an area known for "narcotics transactions and gun crimes," the appellant and other passenger of the minivan moved their hands in a "furtive manner" and continued to do so despite repeated directives from the officer to stop, and the officer's experience that persons "who move their hands in such a furtive manner are likely attempting to hide illegal drugs or weapons from the police." 60 Va. App. at 395–97, 728

S.E.2d at 506. In consideration of all the present circumstances in this case, we conclude that at the time of Pork's seizure, Officer Siniscalchi had reasonable, articulable suspicion that Pork possessed a concealed weapon, which also rendered him potentially armed and dangerous.

### *Terry* Frisk

In addition to allowing brief investigatory detentions, *Terry* also held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a limited search of the suspect's outer clothing "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24. Such frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid. *Sibron v. New York*, 392 U.S. 40, 65–66 (1968). . . . For the reasons stated above that supported the seizure of Pork based upon a reasonable, articulable suspicion that Pork had a concealed weapon, the subsequent pat down of Pork and protective sweep of the vehicle for weapons were also reasonable.

### Inevitable Discovery

During the pat down, Officer Siniscalchi removed a baggy of capsules from Pork's front pocket, which were later determined to be heroin. Pork argues that the seizure of the baggy was improper under the holdings of *Minnesota v. Dickerson*, 508 U.S. 366 (1993), *Cost v. Commonwealth*, 275 Va. 246, 657 S.E.2d 505 (2008), and *Grandison v. Commonwealth*, 274 Va. 316, 645 S.E.2d 298 (2007). The Commonwealth contends that Officer Siniscalchi testified that the character of the heroin capsules was immediately apparent as contraband, therefore satisfying the "plain feel" doctrine of *Dickerson*. The Commonwealth further argues that even if the seizure was improper, the heroin capsules would have inevitably been discovered as a result of the sweep for weapons of the area around the driver's seat, which uncovered a concealed weapon.

On appeal, Pork assigns error only to the trial court's holding with respect to 1) whether reasonable suspicion existed for Pork's seizure and detention and 2) the applicability of the "plain feel" doctrine of *Dickerson*. Pork fails to assign error or even address the trial court's alternative holding regarding the application of the inevitable discovery doctrine. The Commonwealth contends that because Pork failed to assign error to the trial court's inevitable discovery ruling on brief, he has waived any issue regarding error to this ruling on appeal before this Court. We agree.

> This Court's jurisprudence is clear that when a trial court issues one or more alternative holdings, the appellant's failure to address one of those holdings constitutes a waiver of any challenge to the trial court's ruling on that issue. *See Johnson v. Commonwealth*, 45 Va. App. 113, 115–16, 609 S.E.2d 58, 59 (2005). . . . Therefore, because the appellant only challenged the trial court's first holding on appeal, without assigning error to the ruling regarding inevitable discovery, this Court deemed the appellant's argument relating to the illegality of the seizure of drugs waived, and declined to consider whether the trial court properly applied the doctrine of inevitable discovery. *Id.*
>
> Although Pork challenged the trial court's inevitable discovery ruling below, he completely abandoned this challenge on appeal. The trial court specifically held that Officer Siniscalchi's sweep of the area of the driver's area of the car for weapons as part of the pat down of Pork would have resulted in the discovery of the concealed firearm that was located in between the driver's seat and the center console and that, "the arrest would have been made and everything else would have flowed from there in inevitable discovery." Accordingly, the trial court deemed it unnecessary to address the impact of the exclusionary rule to the "plain feel" doctrine to determine if the drugs should have been suppressed. Because the seizure and frisk were proper under the Fourth Amendment and because Pork failed to assign error to the alternative ruling of the trial court on appeal, which is procedurally waived pursuant to *Johnson*, we need not reach the merits of Pork's argument regarding the illegality of the seizure of the heroin.
>
> In sum, based upon the totality of the circumstances, we find that the seizure and pat down of Pork were lawful because Officer Siniscalchi had reasonable, articulable suspicion that Pork had a concealed weapon. We further conclude that we need not address the merits of the legality of the seizure of the baggy of heroin in light of Pork's failure to assign error to the trial court's alternative ruling based on the doctrine of inevitable discovery.

*Pork v. Commonwealth*, No. 1140-14-1, at 1–10 (Va. Ct. App. Mar. 31, 2015) (second alteration in original).

In his § 2254 Petition, like he did on state habeas, Pork contends that he failed to receive the effective assistance of counsel when appellate counsel failed to assign error to the trial court's alternative ruling based on the doctrine of inevitable discovery. (§ 2254

7

Pet. 5.) In rejecting this claim, the Supreme Court of Virginia concluded that Pork could not demonstrate deficiency or prejudice:

> The Court holds that claim (III) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the transcripts of the suppression hearings, demonstrates the trial court held petitioner's seizure and arrest were lawful. Petitioner had a concealed weapon in his vehicle and was a convicted felon. Before the weapon was found, Siniscalchi removed petitioner from his vehicle, patted him down, felt a bulge of capsules in his pocket, and seized the heroin capsules. During the first suppression hearing, the trial court held that even if Siniscalchi's seizure of the heroin capsules from petitioner's pocket was unlawful because Siniscalchi could not determine the nature of the capsules by feel alone (the "plain feel" doctrine), discovery of the concealed weapon would have led to his lawful arrest and the heroin capsules in his pocket would be inevitably discovered through that lawful arrest. *See Commonwealth v. Jones*, 267 Va. 532, 535–36, 593 S.E.2d 204, 206–08 (2004) (inevitable discovery allows for the admission of evidence obtained through unlawful means if the prosecution establishes the evidence would have been inevitably discovered by lawful means). Given its ruling that the heroin capsules would have been inevitably discovered, the trial court did not address the "plain feel" doctrine beyond observing the authority of that doctrine may be distinguishable from petitioner's case due to the size of the bulge and the number of capsules. *See Cost v. Commonwealth*, 275 Va. 246, 252–54, 657 S.E.2d 505, 508–09 (2008). During the second suppression hearing, the trial court held petitioner's seizure and the actions taken thereafter were lawful because Siniscalchi had a reasonable articulable suspicion of criminal activity at the time he removed petitioner from the vehicle. On appeal, petitioner's appellate counsel challenged only the ruling on the "plain feel" doctrine, not the ruling on inevitable discovery, but also challenged the legality of petitioner's seizure. The Court of Appeals of Virginia found petitioner was lawfully seized and the protective sweep of the vehicle for weapons was reasonable. Thus, both the trial court and the Court of Appeals of held petitioner's seizure and arrest were lawful, leading to the unavoidable application of the inevitable discovery doctrine. Under the circumstances, counsel could reasonably have determined any challenge to the inevitable discovery ruling would have been futile because of the rulings by the trial court finding petitioner's seizure lawful. Moreover, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Thus, petitioner has failed to demonstrate

> there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Pork v. Clarke*, No. 160878, at 4–5 (Va. Dec. 14, 2016). The Court discerns nothing unreasonable about the Supreme Court of Virginia's rejection of Claim 1. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, it is RECOMMENDED that Claim 1 be DISMISSED because Pork fails to demonstrate deficiency or prejudice.

### D.     Fourth Amendment Claims

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted). "The rationale for the Court's ruling was that, in the context of a federal habeas corpus challenge to a state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of the application of the rule persist with special force.'" *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985) (quoting *Stone*, 428 U.S. at 494–95). Therefore, in a habeas proceeding, when a federal district court is faced with Fourth Amendment claims, it should "first inquire as to whether or not the petitioner was afforded an *opportunity* to raise his Fourth Amendment claims under the then existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Because the Commonwealth provided Pork with an opportunity to raise his Fourth Amendment claims at trial and on appeal, this Court need not inquire further "unless

9

[Pork] alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." *Id.* The United States Court of Appeals for the Fourth Circuit has admonished that "the burden of pleading and proof is upon [the petitioner] to indicate in the petition . . . the *reasons* he has, and *the facts in support thereof*, as to why he contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment claims." *Id.* at 1266.[3] Pork fails to demonstrate that he did not receive a full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, it is RECOMMENDED that Claims 2, 3, and 4 be DISMISSED.

E. Conclusion

Accordingly, it is RECOMMENDED that the Motion to Dismiss (ECF No. 13) be GRANTED, the action be DISMISSED, and a certificate of appealability be DENIED.

Pork is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims,

---

[3] In this regard, the Fourth Circuit has emphasized that "the ultimate rule of deference" contemplated by *Stone* "would of course be swallowed if impairment in this sense could be shown simply by showing error—whether of fact or law—in the state court proceeding." *Sneed v. Smith*, 670 F.2d 1348, 1355–56 (4th Cir. 1982). Thus, in *Sneed*, the Fourth Circuit rejected the petitioner's claim that allegedly false testimony by a police officer and the application of incorrect constitutional standards constituted an impairment of his opportunity for full and fair litigation of his Fourth Amendment claim. *Id.* at 1356.

and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Pork and counsel for Respondent.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: December 12, 2017
Richmond, Virginia